NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220639-U

NO. 4-22-0639

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 13, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Boone County |
| JACKSON PALZER, | ) | No. 21CF106 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert C. Tobin III, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion in sentencing defendant to 18 months in prison for aggravated driving under the influence.

¶ 2    In January 2022, defendant, Jackson Palzer, entered a guilty plea, open as to sentence, to aggravated driving under the influence (DUI) with great bodily harm (625 ILCS 5/11-501(d)(1)(C) (West 2020)). The trial court sentenced defendant to 18 months in prison.

¶ 3    On appeal, defendant argues his 18-month prison sentence was excessive. We affirm.

¶ 4                    I. BACKGROUND

¶ 5    On November 15, 2020, officers responded to a single-vehicle accident, involving a vehicle leaving the roadway and hitting a tree. Defendant, the driver of the vehicle, told officers he and the three passengers had left a party, and when an animal ran into the road, he lost control

of the vehicle. Defendant admitted he had consumed alcohol but maintained his last drink was hours prior. Defendant's eyes were glassy and bloodshot, he failed field sobriety tests, and his blood alcohol concentration (BAC) was 0.20. Two passengers were transported to the hospital. Officers found beer in the back of the vehicle and a mostly empty bottle of vodka on the driver's side floorboard.

¶ 6    In January 2022, defendant entered an open plea of guilty to one count of aggravated DUI with great bodily harm (*id.*). In exchange, a second count of aggravated DUI and several traffic charges were dismissed. As to great bodily harm, the State argued one of the passengers, Emmie Hansen "suffered injuries including a collapsed lung, bruised ribs, laceration on her kidney, contusion on her kidney and a contusion on her leg." The trial court accepted defendant's plea and set the matter for sentencing.

¶ 7    A. Presentence Investigation Report

¶ 8    The presentence investigation report (PSI) showed defendant was 21 years old at the time of the incident and had no criminal history. Defendant described the incident as " 'regrettable,' " and he believed at the time he was doing the " 'manly' " thing by driving instead of letting one of the three female passengers drive.

¶ 9    As to substance abuse, defendant started drinking when he was " 'college age' " and he drank on the weekends with friends. According to defendant, his drinking habits changed since the incident, and he now only drinks on "special occasions." Defendant completed a substance abuse assessment in December 2021, which recommended 22 hours of DUI treatment. Defendant had not started treatment at the time the PSI had been prepared. Defendant also reported recreational cannabis use two to three times per month.

¶ 10    For the attitudes/values section of the PSI, defendant stated, " 'I messed up in this situation but I don't feel like I don't have a handle on myself.' " He explained he had " 'no problem with drinking,' " and he would not make the same mistake twice. When asked about being placed on probation, defendant stated, " 'No one wants to be in trouble with the law, but Probation is an option I feel I can manage without having to change who I am.' "

¶ 11    Defendant completed high school and some college and was steadily employed as a supervisor with a landscaping business, where he had worked for five years. He had a good relationship with his mother, but he reported not having a very good relationship with his father, who had a " 'DUI or two.' "

¶ 12    The PSI included an Illinois Adult Risk Assessment, which evaluated defendant's strengths and risk factors relevant to determining his risk of reoffending. As strengths, defendant's "willingness to participate in substance abuse treatment, behavior modification programming or any other condition the court imposes" and "supportive family and stable employment" were noted. Listed risk factors for reoffending included "a history of alcohol use that has led to criminal activity."

¶ 13            B. Victim Impact Statements and Character Letters

¶ 14    Defendant's two injured passengers each gave a victim impact statement related to the incident. Emmie Hansen, the named victim, detailed the crash and her extensive injuries. Hansen also explained, right after the crash, when she tried to call 911, defendant tried to convince her to hang up, saying he would get them "out of this mess." Maya McMillan also detailed her injuries, which included burst fractures in her lumbar spine, a broken rib, and lacerations on her kidney. McMillan was hospitalized for five days, went through months of recovery, and suffered lasting physical and emotional effects.

¶ 15 Defendant submitted 11 character letters, including one from the third passenger, Jenna Mancini. Mancini's letter stated she and her friends had asked defendant for a ride and she did not believe he did anything to intentionally harm them.

¶ 16 C. Sentencing Hearing

¶ 17 Defendant gave a statement in allocution, in which he apologized to the victims and their families, the first responders, and his friends and family. Defendant explained he was attempting to get everyone home safely and stated, "[he] believed [he] could be a solution when quite evidently [he] became the catalyst to quite the opposite." Defendant explained he had learned from the experience, and he would never "touch the wheel again under the influence."

¶ 18 The State recommended "a term" in the Illinois Department of Corrections, highlighting the harm to McMillan, the need for deterrence, what the State described as defendant "thinking immaturely" before and after the incident, and defendant's BAC of 0.20.

¶ 19 Defense counsel requested probation with a term in the county jail. Counsel highlighted the mitigating factors of defendant's lack of criminal history and young age, the unlikeliness the conduct would reoccur, and the remorse defendant had showed. Counsel argued defendant would likely comply with the terms of probation.

¶ 20 In pronouncing defendant's sentence, the trial court stated it considered, "the PSI, cost of incarceration, victims' statements, statutory factors in aggravation and mitigation, [and the] nature of the offense." The court found it could not consider the serious harm to the named victim, Hansen, as that harm was inherent in the offense, but could consider the harm as it pertained to the other injured victim, McMillan. The only other statutory factor the court considered was deterrence. In mitigation, the court considered defendant did not contemplate his conduct would cause or threaten serious harm and defendant had no criminal history. The court also considered

defendant's remorse, although it stated, "I don't know if it's true remorse or it's remorse you got caught," noting defendant's attempt to stop Hansen from calling 911. As to whether defendant would be more likely to commit another crime or comply with probation, the court noted defendant had no new offenses while out on bond, but it noted the high BAC in the case and that defendant had not entirely stopped drinking. The court also noted defendant had not started the treatment recommendation. In particular, the court stated, "Your quote was no one wants to be in trouble with the law but probation is an option I feel I can manage without having to change who I am. If you really don't intend to change who you are, then what the heck are we doing with probation?" The court therefore found defendant was unlikely to complete probation, stating, "Cannabis, continued cannabis use, alcohol use, choosing not to participate in treatment, I can almost hear without being present for that the conversation that [defense counsel] must have had with you when he saw that you hadn't even started treatment yet."

¶ 21 The trial court sentenced defendant to 18 months in prison.

¶ 22 D. Postsentencing Motion

¶ 23 Defendant filed a motion to reconsider his sentence, arguing it was excessive based on the balance of factors. At the hearing on the motion, defense counsel additionally argued defendant's admission to the use of cannabis and alcohol should be a factor in mitigation, not aggravation, because it showed honesty.

¶ 24 The trial court denied the motion to reconsider, stating:

"I've thought about it and again I think that there's no exact science to this but I do think that I, at least to the best of my abilities, properly applied the statutory as well as nonstatutory factors in aggravation and mitigation, considered all the information set out in the PSI as well as the evidence presented."

- 5 -

The court concluded it considered "the cost of incarceration" and defendant's "rehabilitative potential" and came up with "the proper sentence."

¶ 25        This appeal followed.

¶ 26                                II. ANALYSIS

¶ 27        On March 2, 2023, alongside his reply brief, defendant filed a motion for an expedited decision, noting his impending release from incarceration on July 7, 2023. The State offered no objection to defendant's motion. We granted the motion and now consider this appeal pursuant to Illinois Supreme Court Rule 311(b) (eff. July 1, 2018).

¶ 28        Defendant argues the trial court abused its discretion when it sentenced him to 18 months in prison. Specifically, defendant argues the court (1) failed to adequately consider mitigating factors, such as defendant's youth and lack of criminal history and (2) abused its discretion in rejecting defendant's request for probation.

¶ 29        Generally, the trial court is afforded broad discretion in fashioning an appropriate sentence. A reviewing court will not disturb that sentence absent an abuse of discretion. *People v. Price*, 2011 IL App (4th) 100311, ¶ 36. An abuse of discretion will not be found unless the court's sentencing decision is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 26. A sentence within the statutory guidelines provided by the legislature is presumed to be proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. Only when a sentence varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense can a trial court be found to have abused its discretion at sentencing. *People v. Wheeler*, 2019 IL App (4th) 160937, ¶ 39 "In considering the propriety of a sentence, the reviewing court must proceed

with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently." *People v. Fern*, 189 Ill. 2d 48, 53 (1999).

¶ 30    Defendant was convicted of aggravated DUI with great bodily harm (625 ILCS 5/11-501(d)(1)(C) (West 2020)), a Class 4 felony with a sentencing range of 1 to 12 years' imprisonment (*id.* § 11-501(d)(2)(F)). Because defendant's sentence was within the permissible range, we begin with the presumption the sentence is proper. *Knox*, 2014 IL App (1st) 120349, ¶ 46. Defendant claims, given his lack of criminal history and his youth, the trial court abused its discretion in sentencing him to 18 months' imprisonment.

¶ 31    In this case, the trial court noted it considered defendant had "no history of prior criminal activity." The PSI, which the court expressly considered, explained defendant's age and lack of criminal history. However, the court weighed these factors against significant aggravating factors, including the seriousness of the offense, the need for deterrence, that defendant's actions cause serious physical harm, and the likelihood defendant would reoffend. In particular, the court noted defendant's extremely high BAC of 0.20 and that defendant continued to drink after the incident. Although there were mitigating factors present, the court is not required to give greater weight to mitigating factors than to the severity of the offense, nor does the presence of mitigating factors either require a minimum sentence or preclude a maximum sentence. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010); *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. Despite defendant's youthfulness and lack of criminal history, we cannot say defendant's 18-month sentence, near the minimum range available to the court, varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Wheeler*, 2019 IL App (4th) 160937, ¶ 39. Accordingly, we conclude the court did not abuse its discretion in imposing this sentence.

¶ 32    We similarly find the trial court did not abuse its discretion in denying defendant a sentence of probation.

¶ 33    Section 5-6-1(a)(1), (2) of the Unified Code of Corrections (730 ILCS 5/5-6-1(a)(1), (2) (West 2020)) states a court shall impose a sentence of probation or conditional discharge unless, "having regard to the nature and circumstance of the offense, and to the history, character and condition of the offender," the court is of the opinion that (1) imprisonment "is necessary for the protection of the public" or (2) "probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice."

¶ 34    Defendant argues the trial court abused its discretion when it determined it would not sentence defendant to a term of probation. In support of his argument, defendant cites *People v. Daly*, 2014 IL App (4th) 140624.

¶ 35    In *Daly*, the trial court stated at sentencing that it had a duty to see that driving under the influence was deterred and that a sentence of probation would deprecate the seriousness of the offense. *Id.* ¶ 18. On appeal, this court found that the trial court's comments at sentencing demonstrated a predisposition against probation for certain types of offenders. *Id.* ¶ 36. Specifically, this court stated, "a trial judge 'may not refuse to consider an alternative [sentence] simply because the defendant is in a class disfavored by the court.' " *Id.*

¶ 36    We find *Daly* distinguishable. Here, the trial court did not declare that all DUI offenders should not receive probation. Rather, the court stated that defendant's statements and actions, along with the circumstances of the offense, made it unlikely defendant would complete probation. The court specifically noted defendant's statement he could manage probation "without having to change who I am." Defendant argues this statement was "cherry-picked" from his PSI.

However, defendant made several statements demonstrating he did not see the need to change. Although he was recommended for 22 hours of DUI treatment, defendant reported " 'I messed up in this situation but I don't feel like I don't have a handle on myself.' " Further, despite the seriousness of the offense, wherein defendant had a BAC of 0.20 and seriously injured two people, defendant continued to drink on "special occasions," and he had not started recommended treatment in the three months since his assessment. Defendant's actions and views of the situation demonstrated to the trial court probation would deprecate the seriousness of his conduct and be inconsistent with the ends of justice. It was not an abuse of discretion for the court to find probation was not appropriate in this case.

¶ 37                                                    III. CONCLUSION

¶ 38                        For the reasons stated, we affirm the trial court's judgment.

¶ 39                        Affirmed.