NOTICE
Decision filed 06/12/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230221-U

NO. 5-23-0221

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Saline County. |
| | ) | |
| v. | ) | No. 16-CF-90 |
| | ) | |
| BRIAN T. BURNS, | ) | Honorable |
| | ) | Walden E. Morris, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Cates and Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The defendant's sentence is affirmed where the trial court did not abuse its discretion when it sentenced him to 40 years' imprisonment for first degree murder and 5 years' imprisonment for concealment of a homicidal death.

¶ 2   Following a jury trial, the defendant was found guilty of first degree murder (720 ILCS 5/9-1(a)(2) (West 2016)) and concealment of a homicidal death (*id.* § 9-3.4(a)). The trial court subsequently sentenced him to 40 years' and 5 years' imprisonment in the Illinois Department of Corrections (IDOC), respectively, to be served consecutively, for an aggregate sentence of 45 years' imprisonment. On appeal, the defendant argues that his sentence was excessive. For the following reasons, we affirm the defendant's sentence.

1

¶ 3                                   I. BACKGROUND

¶ 4    On March 17, 2016, the defendant was charged with two counts of first degree murder and one count of concealment of a homicidal death in connection with the death of his estranged wife, Carla Burns, who disappeared on March 8, 2016. The defendant initially told police that he had not seen Carla since the previous week. Police subsequently discovered charred skeletal remains on a property adjacent to the defendant's property. In a custodial interview after his arrest, the defendant stated that Carla accidentally shot herself while the two of them were target-shooting. He admitted putting Carla's body on a brush pile and burning it. He stated he did so due to panic, a desire for Carla's family not to see her deceased body, and a promise that he and Carla had made to each other that whoever of the two died last would cremate the body of the one who died first. The defendant maintained his version of events throughout his testimony at trial.

¶ 5    Before trial, the defendant's attorney sought a psychological evaluation of the defendant due to his belief that there was a *bona fide* doubt as to the defendant's fitness to stand trial. The trial court granted the request.

¶ 6    Dr. Fred D. Klug performed the evaluation. Dr. Klug met with the defendant on April 23, 2019, and the evaluation report was filed with the court on May 22, 2019. In his report, Dr. Klug noted an Axis I diagnostic impression of "Adult Antisocial Behavior." He concluded, "It is my opinion that Mr. Burns is competent to stand trial at this time. The issues [*sic*] of 'getting off task' is easily remedied by redirecting him."

¶ 7    The defendant's jury trial commenced on December 9, 2019. The jury ultimately found the defendant guilty of one count of first degree murder as well as concealment of a homicidal death. The trial court ordered the probation department to prepare a presentence investigation report (PSI) for sentencing. The defendant did not file a motion for a new trial.

¶ 8    The defendant's PSI, which was filed February 6, 2020, set forth the defendant's date of birth as April 1, 1959. It noted that prior to the murder charges herein, the defendant's only criminal history consisted of a speeding citation in Alexander County. However, it also indicated that the defendant was convicted of three felony charges on May 12, 2017, in Saline County case No. 16-CF-327, that arose during the pendency of this case, which were related to this case. Those charges were (1) solicitation to commit aggravated kidnapping of the Saline County State's Attorney, (2) conspiracy to commit aggravated kidnapping, and (3) attempted aggravated kidnapping. The convictions resulted in a sentence of 20 years' imprisonment in IDOC. The defendant reported that he never used illegal substances. He "advised that his overall mental health" was "good." An addendum to the PSI was filed on February 10, 2020, and contained victim impact statements from Carla's two adult sons and her sister.

¶ 9    After several continuances, the sentencing hearing was held on September 8, 2020. The State argued that the defendant should be sentenced to 50 years' imprisonment for the first degree murder conviction and 5 years' imprisonment for the concealment of a homicidal death conviction. Defense counsel requested the defendant receive a sentence at the lower end of the sentencing range and noted that the defendant was unlikely to live to the end of even the minimum sentence.

¶ 10    In allocution, the defendant began by stating that Carla's death was "a tragedy of epic proportions, the untimely, accidental death of my best friend, my wife, Carla." He opined that he once donated a kidney to "a complete stranger," participated in a mission trip to Haiti after its 2010 earthquake, and participated in a mission trip to Baton Rouge after Hurricane Katrina struck. He maintained that he did not murder Carla.

¶ 11    In rendering its decision, the trial court stated that it had weighed and considered the information contained in the PSI and its addendum, the evidence presented at trial, the IDOC

financial impact of incarceration statement, the arguments of counsel for the State and for the defendant, the sentencing recommendations, the defendant's statement in allocution, the defendant's rehabilitative potential, and the factors in mitigation and aggravation as delineated in sections 5-5-3.1 and 5-5-3.2 of the Unified Code of Corrections (730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2020)). It then found "the defendant is a danger to the public" and a term of probation was not an authorized sentence as to the charged offense of first degree murder. The trial court then sentenced the defendant to 40 years' imprisonment for first degree murder and 5 years' imprisonment for concealment of a homicidal death. It further found that the sentence for concealment of a homicidal death would run consecutive to the murder sentence and that the murder and concealment sentences would each be served consecutively with the 20-year sentence imposed in 16-CF-327.

¶ 12     The defendant filed a *pro se* motion for a reduction of sentence on September 25, 2020. In it, he alleged, *inter alia*, that (1) Carla died accidentally and there was no proof otherwise, (2) he received an unfair trial, and (3) the sentence was a death sentence in light of his age. The motion was thereafter adopted by defense counsel. On September 21, 2022, the trial court heard and denied the motion. The defendant now appeals.

¶ 13                                II. ANALYSIS

¶ 14     The defendant argues that the trial court abused its discretion when sentencing him because his "sentence is excessive in light of his age, mental health problems, decades of law-abiding life, and contributions to humanity, as well as the fact that his crimes arose due to circumstances unlikely to recur." He avers that the sentence is actually a life sentence in that if he manages to survive his 65 years of imprisonment (45 years in this case and 20 years in 16-CF-327), he would be 116 years old at the time of his release. The defendant opines that even if the trial court had

4

sentenced him to the minimum sentence allowed of 22 years' imprisonment, he would be 94 years old upon his release. He avers that due to the 73.5-year life-expectancy of an American man, he most likely would not "survive even a minimum term, let alone survive in a condition to be committing more crimes." He asks this court either to remand the case for resentencing or to reduce his sentence outright to a term much closer to the 22-year minimum.

¶ 15    The State argues that the trial court did not abuse its discretion when sentencing the defendant. It avers the sentences for the offenses were within the sentencing ranges for first degree murder and for concealment of a homicidal death. Regarding the defendant's age, the State argues the trial court expressly stated that it considered, weighed, and balanced, *inter alia*, the defendant's PSI which clearly stated his age in numerous places throughout. The State asserts that no evidence of the defendant's mental health was presented to the trial court other than the defendant's self-report in his PSI that his "overall mental health" was "good." The State next argues that not only did the defendant have a traffic conviction, but he was also arrested after the onset of this case for and was later convicted of solicitation to commit aggravated kidnapping of the Saline County State's Attorney, conspiracy to commit aggravated kidnapping, and attempted aggravated kidnapping. Finally, the State argues that the defendant's past good deeds do not now entitle him to avoid the consequences of his actions, and the unlikelihood of circumstances recurring should not receive greater weight than the seriousness of the offenses.

¶ 16    Here, we must determine whether the trial court erred when it sentenced the defendant. "Absent an abuse of discretion, a reviewing court will not disturb a sentence which falls within the statutory limits." *People v. Maldonado*, 240 Ill. App. 3d 470, 484 (1992). To find an abuse of discretion has occurred, a reviewing court must find that the trial court's ruling was such that "no reasonable man would take the view adopted by the court." *In re Leona W.*, 228 Ill. 2d 439, 460

5

(2008). When the sentence falls within the statutory range, an abuse of discretion can be found only if the sentence "is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense" (*People v. Stacey*, 193 Ill. 2d 203, 210 (2000)), or where the sentence is the result of inadequate consideration of relevant mitigation or the defendant's rehabilitative potential (*People v. Cavazos*, 2023 IL App (2d) 220066, ¶ 73). A reviewing court will presume the trial court considered all relevant mitigating evidence unless the record affirmatively demonstrates otherwise beyond the sentence itself. *People v. Brown*, 2017 IL App (1st) 142877, ¶ 64. The mere existence of mitigating factors does not require the trial court to impose the minimum sentence allowed, nor does it preclude the imposition of the maximum sentence. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). Rather, the trial court must balance all relevant factors in reaching its determination of the appropriate sentence. *Id.* The most important factor to be considered when determining the appropriate sentence is the seriousness of the offense. *Id.* at 159.

¶ 17    Here, we agree with the State that the trial court did not abuse its discretion when it sentenced the defendant. The sentences were well within the statutory limits. The gravity of the crimes was great. Moreover, the defendant has pointed to nothing in the record to indicate that the trial court did not consider all relevant factors, including the defendant's age. Neither has the defendant presented any evidence that his mental health was of such magnitude that it affected his ability to appreciate the weight of the crimes. While commendable, we cannot say that the defendant's past charity and lack of previous criminal history outweigh the seriousness of the crimes. "The trial court's sentence is given great deference, as 'the trial court is in the best position to consider the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.' " *People v. Deleon*, 2025 IL App (1st) 211454, ¶ 55 (quoting *People*

*v. Etherton*, 2017 IL App (5th) 140427, ¶ 15). As the reviewing court, it is not our place to reweigh the evidence and substitute our judgment for that of the trial court. *Stacey*, 193 Ill. 2d at 209. The defendant asks us to do just that, and we decline.

¶ 18    As a separate matter, we note that the mittimus entered on September 8, 2020, wrongly cites 720 ILCS 5/9-1(a)(2) for the offense of concealment of a homicidal death. The correct citation is 720 ILCS 5/9-3.4(a). As a result, we find remand to the trial court for correction of the mittimus to be in order.

¶ 19                                    III. CONCLUSION

¶ 20    For the foregoing reasons, we affirm the defendant's sentences of 40 years' imprisonment for first degree murder and 5 years' imprisonment for concealment of a homicidal death. We remand the case to the trial court for correction of the mittimus.


¶ 21    Affirmed and remanded with directions.